**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PENELOPE BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1161 |
| | ) | Judge Nora Barry Fischer |
| CITY OF CLAIRTON, DUANE | ) | |
| RINGGOLD, and ERIC FUSCO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

In this civil action, Plaintiff Penelope Bell ("Plaintiff" or "Bell") brings claims for sex and age discrimination, hostile work environment, civil rights violations, and several state law torts arising from her employment at the Clairton Public Works Department against Defendants City of Clairton, Duane Ringgold, and Eric Fusco (collectively, "Defendants").   (Docket No. 28). Presently before the Court are two motions to dismiss brought by Defendants Eric Fusco and City of Clairton pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Nos. 32, 34), and a motion for judgment on the pleadings brought by Defendant Duane Ringgold pursuant to Federal Rule of Civil Procedure 12(c).  (Docket No. 42).  Plaintiff opposed each motion.  (Docket Nos. 37; 38; 39; 57).  Once the motions were fully briefed, the Court heard oral argument from counsel on May 18, 2026, the official transcript of which has been produced and reviewed by the Court. (Docket Nos. 75; 78).  After consideration of the parties' arguments, and for the following reasons, Defendants' motions will be granted.

## II.    FACTUAL BACKGROUND

The following facts come from Plaintiff's Amended Complaint.  (Docket No. 28).  The

1

Court assumes these allegations are true for purposes of the present motion. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

Plaintiff worked for Defendant City of Clairton (the "City") as a laborer in the Public Works Department, where her job duties included, *inter alia*, lawn maintenance, street sign installation, road repair, and snow removal. (Docket No. 28 ¶¶ 12–13). She was over the age of 40 during all relevant times in this matter. (*Id.* ¶ 125). She consistently received positive feedback from the City's officials and community members regarding her work performance. (*Id.* ¶¶ 14–16). Defendant Eric Fusco ("Fusco") was Plaintiff's supervisor and Defendant Duane Ringgold ("Ringgold") was her coworker between 2018 and 2023. (*Id.* ¶¶ 17, 18).

When Plaintiff started working for the City, Fusco and the City Manager voted against hiring her as a full-time employee. (*Id.* ¶ 19). She alleges that they did so because she is a woman. (*Id.*). Notwithstanding their opposition, she was brought on board full time. (*Id.* ¶ 20). Plaintiff asserts that Fusco subsequently subjected her "to discriminatory treatment based on her sex and age" on numerous occasions over the course of her employment. (*Id.* ¶ 21). In particular, he: (1) told her that "women belong in the kitchen;" (2) referred to menopause as "mentalpause;" (3) called her derogatory names, such as delusional, liar, coward, bootlicker, town crier, and "stuuuuper"—i.e., "super stupid;" (4) told others that she is a "fucking embarrassment;" (5) denied her a promotion; (6) insulted her on Facebook; (7) refused to credit her accomplishments; and, (7) blamed her for "things she has not done." (*Id.* ¶¶ 22–25, 27–30). Moreover, Ringgold witnessed Fusco "say derogatory things to Plaintiff" and repeated his remarks to her. (*Id.* ¶ 31). Plaintiff alleges that she reported "the harassment and discrimination" to George Glagola, the Code Enforcement Officer at Public Works, but no action was taken to address the situation. (*Id.* ¶¶ 122, 123, 137, 153).

2

The bulk of Plaintiff's factual allegations concern Ringgold. To that end, at some point in mid-August 2018, Plaintiff was working with Ringgold and he exposed himself and tried to force her to touch his penis, but she refused. (*Id.* ¶¶ 32–36). Ringgold promptly apologized. (*Id.* ¶ 36). Then, between late August and early September 2018, Plaintiff and Ringgold were working together at a park. (*Id.* ¶¶ 37–38). As they approached a building with blocked windows, Ringgold grabbed Plaintiff and she fell to the ground. (*Id.* ¶¶ 38–39, 45). Ringgold allegedly proceeded to pull Plaintiff's clothing off and rape her. (*Id.* ¶¶ 45–51). Afterwards, Plaintiff returned to the City's Municipal Building in tears, where she cleaned herself up and continued to work. (*Id.* ¶¶ 53–54).

Following this assault and until Ringgold resigned in March 2023, he sexually harassed Plaintiff on multiple subsequent occasions. (*Id.* ¶ 57). In addition, he told Plaintiff that "snitches get stitches," which she understood was a threat to discourage her from reporting the assault. (*Id.* ¶ 56). Although she was afraid to come forward, Plaintiff reported "everything" to George Glagola, the Mayor, and an unidentified councilwoman. (*Id.* ¶¶ 56–57, 137). However, no action was taken. (*Id.* ¶¶ 78, 108, 153). Plaintiff alleges that she continues to work "by herself in a hostile work environment" to date. (*Id.* ¶ 121). In particular, on June 8, 2024, someone slashed her tires after she filed a formal complaint against her foreman. (*Id.* ¶¶ 56–57).

The federal causes of action in Plaintiff's Amended Complaint include claims for sex/age discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") against the City, and for violations of her Fourteenth Amendment equal protection rights pursuant to 42 U.S.C. § 1983 against all Defendants. (*Id.* at 10–15). In addition, Plaintiff brings state law claims for sexual assault, rape, and battery against Ringgold;

3

for negligent supervision against the City; and for intentional infliction of emotional distress against all Defendants.  (*Id.* at 5–9).

### III.    PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on July 31, 2025.  (Docket No. 1).  After Defendants moved to dismiss her claims under Federal Rule of Civil Procedure Rule 12(b), the Court granted Plaintiff leave to file an amended complaint and denied Defendants' motions to dismiss as moot on December 4, 2025.  (Docket Nos. 11; 13; 15; 27).  Two weeks later, Plaintiff submitted her Amended Complaint.  (Docket No. 28).  On December 31, 2025, Ringgold answered with counterclaims for assault, battery, intentional/negligent infliction of emotional distress, defamation per se, and civil conspiracy, as well as a crossclaim for negligent supervision against the City. (Docket No. 30).  He also moved to join the former Mayor of Clairton, Richard Lattanzi, as an additional party to his defamation, civil conspiracy, and negligent supervision counter/crossclaims under Federal Rule of Civil Procedure 19.  (Docket No. 31).

Fusco and the City challenged the Amended Complaint by filing motions to dismiss and supporting briefs on January 2, 2026.  (Docket Nos. 32; 33; 34; 35).  Approximately two weeks later, Plaintiff timely answered Ringgold's counterclaims and filed briefs in opposition to his joinder motion and the two motions to dismiss.  (Docket Nos. 36; 37; 38; 39).  That same day, Ringgold and the City submitted a consent motion to stay the City's response to Ringgold's crossclaim pending resolution of his Motion for Joinder, which the Court granted on January 22, 2026.  (Docket Nos. 40; 41).  On January 27, 2026, Ringgold challenged the Amended Complaint by filing a Motion for Judgment on the Pleadings and supporting brief.  (Docket Nos. 42; 43).  Fusco and the City subsequently submitted reply briefs on February 9, 2026 and February 12, 2026, respectively, and Plaintiff filed sur-replies to same on February 24, 2026 and February 26,

2026. (Docket Nos. 46; 47; 52; 55).

Plaintiff filed a brief in opposition to Ringgold's Motion for Judgment on the Pleadings on February 16, 2026. (Docket No. 48). This brief contained several deficient citations and suspect metadata, which resulted in the Court issuing two separate show cause orders upon Plaintiff's counsel on March 17, 2026 and April 2, 2026. (Docket Nos. 56; 67). The issues set forth in these orders, as well as Plaintiff's counsel's responses thereto, will be addressed in a separate forthcoming decision. For purposes of the present motions, the Court simply notes that the March 17, 2026 Show Cause Order directed Plaintiff to submit an amended brief in response to Ringgold's motion, which she filed on March 19, 2026. (Docket No. 56; 57). Additionally, in the briefing submitted by Plaintiff's counsel in response to the April 2, 2026 Show Cause Order, she advised that Plaintiff did not oppose dismissal of her Title VII and ADEA claims against the individual Defendants, and the Court dismissed those claims, i.e., Counts VI, VII, and VIII, as to Ringgold and Fusco on May 6, 2026. (Docket Nos. 69–71).

The Court heard oral argument on all the foregoing matters on May 18, 2026, the official transcript of which was filed on June 22, 2026. (Docket Nos. 75; 78). During the hearing, the Court granted Ringgold's request to stay his Motion for Joinder pending resolution of his Motion for Judgment on the Pleadings. (Docket Nos. 75; 76). In addition, the Court granted the City leave to supplement its Motion to Dismiss with copies of Plaintiff's EEOC Complaint and the corresponding EEOC decision, which the City subsequently submitted on May 21, 2026. (Docket No. 77). Accordingly, as the pending motions have been fully briefed and argued, they are now ripe for disposition.

## IV. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plausibility exists somewhere between "possible" and "probable."  The former necessitates factual allegations that are "more than merely consistent with a defendant's liability."  *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  But the latter only demands that the court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1937 (citations omitted).

Detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss, however, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).  In general, a trial court "may not consider matters extraneous to the pleadings."  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  However, courts may also consider "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pinkney v. Meadville, Pennsylvania*, 2022 WL 1616972, at *2 (3d Cir. 2022) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)).

The United States Court of Appeals for the Third Circuit has instructed district courts to utilize a three-step process in evaluating a Rule 12(b)(6) motion to dismiss.  *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022).  First, the court must set out the elements of the plaintiff's claim; second, identify and disregard any "formulaic recitation of the elements" or allegations that are "so threadbare or speculative" such that they amount to nothing more than

6

mere conclusory statements; and, finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]" *Id.* at 327–328 (alteration, internal quotation marks, and citations omitted). And, courts must draw all reasonable inferences in favor of the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016).

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he or she is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (same); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1367 (2019) ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.").

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D. Pa. 2012), *aff'd*, 556 F. App'x 103 (3d Cir. 2014). "The only difference is that 'a Rule 12(b) motion is filed before a responsive pleading is filed,' while 'a Rule 12(c) motion may be filed after the pleadings are closed.'" *Dunleavy v. Mid-Century Ins. Co.*, 460 F. Supp. 3d 602, 606 (W.D. Pa. 2020) (quoting *Kaite v. Altoona Student Transp., Inc.*, 296 F. Supp. 3d 736, 739 (W.D. Pa. 2017)). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6)

7

motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). Thus, a court utilizes the same three-step process set forth above and accepts "all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id.* at 417–18.

## V.    DISCUSSION

Defendants argue that all counts in the Amended Complaint should be dismissed as time-barred and/or for failing to state a claim upon which relief may be granted. (Docket Nos. 33; 35; 43). Plaintiff counters that her claims are timely under the continuing violation doctrine and meet the federal pleading standards such that the case should be permitted to move beyond the pleadings and into the discovery phase. (Docket Nos. 38; 39; 57). While Defendants lodge several arguments in support of their respective motions, the Court primarily focuses on the timeliness of Plaintiff's claims as this issue is largely dispositive. Then the Court explains its declination to exercise supplemental jurisdiction over Ringgold's remaining state law claims. The Court's rationale follows.

### a.    Title VII and ADEA Claims

#### i.    Timeliness

At the outset, the Court notes that the Third Circuit permits a defendant to assert the statute of limitations defense via a motion to dismiss when the dates alleged show that the cause of action has not been brought within the applicable limitations period, i.e., where it is apparent on the face of the complaint that the claims asserted therein are time-barred. *See Robinson v. Johnson*, 313 F.3d 128, 135 n.3 (3d Cir. 2002); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994).

In the context of employment claims, "[a] plaintiff must exhaust all required administrative

remedies before bringing a claim for judicial relief." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (internal quotation marks and citation omitted). For purposes of Title VII and the ADEA, this exhaustion requirement is satisfied when a plaintiff files a charge of discrimination with the EEOC and procures a notice of the right to sue. *See Remp v. Alcon Lab'ys, Inc.*, 701 F. App'x 103, 106 (3d Cir. 2017). "For a Pennsylvania plaintiff's Title VII or ADEA claim to be timely," the charge "must have been filed with the EEOC within 300 days of the allegedly unlawful act." *Nelatury v. Pennsylvania State Univ.*, 633 F. Supp. 3d 716, 731 (W.D. Pa. 2022) (citing *Mandel*, 706 F.3d at 165). The continuing violation doctrine is a limited exception to this requirement, which provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Napier v. Cnty. of Snyder*, 833 F. Supp. 2d 421, 427 (M.D. Pa. 2011).

Here, the City argues that Plaintiff's employment claims are time-barred because Plaintiff failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the alleged unlawful practice occurred. (Docket No. 35). Plaintiff counters that these claims are timely under the continuing violation doctrine, and that, the last incident—i.e., her tires being slashed after she filed a formal complaint against her foreman on June 8, 2024—falls "well within the 300-day period before her EEOC filing on May 2, 2025." (Docket No. 39 at 3).

As referenced above, the City supplemented its motion to dismiss with a copy of Plaintiff's EEOC charge following oral argument. (Docket No. 77).[1] The supplement shows that Plaintiff filed her charge with the EEOC on May 2, 2025, which is 328 days after the June 8, 2024 tire-

---

[1] To that end, "in the Third Circuit, it is well settled that a court may consider administrative documents, such as a plaintiff's EEOC charges, and public records without converting the motion to dismiss to a motion for summary judgment." *Wormack v. Shinseki*, No. 2:09-CV-916, 2010 WL 2650430, at *1 n.1 (W.D. Pa. July 1, 2010).

slashing incident.  (Docket No. 77-1 at 2).  In other words, the most recent incident alleged in the Amended Complaint—which Plaintiff contends is "the last act evidencing the continuing practice"—does not actually fall "well within" the 300-day limitations period.  *Napier*, 833 F. Supp. 2d at 427.  Thus, even if the Court applied the continuing violation doctrine here, Plaintiff's claims would still be untimely.

To the extent Plaintiff relies on her contention that "[t]his situation continues to the present time" to rescue her employment claims, this allegation is too conclusory and vague to establish that "*at least one act* falls within the applicable limitations period."  *Mandel*, 706 F.3d at 166 (emphasis added).  *See, e.g.*, *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 687–88 (E.D. Pa. 2016) ("It is clear from the record that Vasquez is unable to point to an incident that occurred within the applicable limitations period.  Hence, her claim is time-barred.); *Snyder v. Baxter Healthcare, Inc.*, No. CIV.A. 08-566, 2009 WL 185993, at *4 (W.D. Pa. Jan. 23, 2009) (finding that allegations based on conduct that was "continuous and ongoing" to the present time were "devoid of facts suggestive of the proscribed conduct" and "failed to state a claim under the plausibility standard announced in *Twombly*.").

In the hostile work environment context, the Third Circuit clarified the extent of the continuing violations doctrine with respect to these claims:

> Under [the continuing violation] doctrine, discriminatory acts that aren't individually actionable may be aggregated to make out a Title VII hostile environment claim. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013).  These acts can occur at any time if they're linked in a pattern of actions continuing into Title VII's limitations period.  *Id.*  All the alleged acts, however, must be part of the same unlawful employment practice, *id.* at 165–66, meaning they involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *id.* at 167.

*Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017).  On the other hand, a "discrete act" constitutes a separate actionable unlawful employment practice, which includes acts such as

"termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even though they are related to the acts alleged in timely filed charges." *Id.* at 113, 122 S. Ct. 2073.

Plaintiff does not dispute that most of the individual acts she complains of occurred outside the applicable limitations period. Nor does she "contend that there are any acts occurring inside the period which, considered in themselves, are sufficient to support liability." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). Instead, she argues that "[t]he discriminatory conduct by Defendant Fusco, including telling her that 'women belong in the kitchen' and mocking menopause, constituted part of an ongoing pattern of sex and age discrimination that continued through June 8, 2024." (Docket No. 39 at 2–3). Therefore, the Court must "determine whether the acts about which [Plaintiff] complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Morgan*, 536 U.S. at 120, 122 S. Ct. at 2076.

The Amended Complaint contains no factual allegations which suggest that the "the last act evidencing the continuing practice," *Napier*, 833 F. Supp. 2d at 427, is sufficiently "linked in a pattern" to the other alleged discriminatory actions. *Mercy Cath. Med. Ctr.*, 850 F.3d at 566. Even if the tire-slashing incident on June 8, 2024 fell within the limitations period, there is no information regarding who slashed Plaintiff's tires or how this event relates to the other gender or age-based discrimination she allegedly endured. Perhaps more importantly, there is no indication that this incident was similar in nature to Fusco's alleged comments or general favorable treatment of male/younger employees, nor the purported sexual assaults and harassment by Ringgold. In other words, the Court cannot reasonably infer that the tire-slashing event was "similar conduct by

11

the same individuals, suggesting a persistent, ongoing pattern." *Id.* Even viewed in the light most favorable to Plaintiff, the June 2024 incident is not sufficiently similar to the untimely acts that implicated her gender or age. *See Payne v. Cnty. of Delaware*, No. CV 25-295, 2025 WL 2969120, at *8 (E.D. Pa. Oct. 17, 2025) ("None of the allegations that occurred within the limitations period involve 'sufficiently similar' conduct to the alleged sexually harassing behavior, sexist comments, or abuse by Boyce that would allow Mrs. Payne to invoke the continuing violation doctrine."). Accordingly, it is apparent on the face of the Amended Complaint that Plaintiff's ADEA and Title VII claims are time-barred and subject to dismissal.

### ii. Sufficiency

Even if Plaintiff's Title VII and ADEA discrimination claims were timely, they nonetheless fail to state a claim to relief that is plausible on its face. To that end, "[t]o survive a motion to dismiss on a Title VII claim, a plaintiff must plead facts sufficient to raise a reasonable expectation that discovery will reveal" that she: "(1) is a member of a protected class, (2) was qualified for the position which she held, (3) suffered an adverse employment action which was (4) taken under circumstances giving rise to an inference of discrimination." *McCreary v. Adult World, Inc.*, 729 F. Supp. 3d 458, 463 (E.D. Pa. 2024) (internal quotation marks and citation omitted). Similarly, "[t]he elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.*

12

(quoting *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3d Cir. 1999)).

Here, the City argues that the only adverse employment action that Plaintiff alleges she suffered is the denial of a promotion. (Docket No. 35 at 8–9). However, the City maintains that "Plaintiff does not plead any facts to plausibly allege that her lack of promotion was related to her age or gender or even if a promotion occurred," including that "any employee received a promotion, let alone a younger or male employee." (*Id.* at 8). Plaintiff counters that she has alleged "specific instances" of sex and age discrimination, including Fusco's comments, which "combined with the differential treatment" of male/younger employees, are sufficient to state discrimination claims under Title VII and the ADEA at this stage. (Docket No. 39 at 4).

As to the third element, to establish an adverse employment action, an employee "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355, 144 S. Ct. 967, 974, 218 L. Ed. 2d 322 (2024). "[I]n other words, that the employer treated the employee 'worse' because of a protected characteristic." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (quoting *Muldrow*, 601 U.S. at 355, 144 S. Ct. at 974).

With respect to the final element, the "inference of discrimination requirement can be established 'in a number of ways.'" *Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, 628 F. Supp. 3d 554, 572 (E.D. Pa. 2022) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)). "For example, a plaintiff may point to 'comparator evidence, evidence of similar . . . discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting [discriminatory] animus.'" *Id.* (alterations in original). However, "[d]erogatory comments or stray remarks in the workplace that are unrelated to employment decisions, even when uttered by decision-makers, do not constitute

13

direct evidence of discrimination." *Weightman v. Bank of New York Mellon Corp.*, 772 F. Supp. 2d 693, 702 (W.D. Pa. 2011). "When determining whether such remarks allow an inference of discrimination, the Court must consider three factors: (1) relationship of the speaker to the employee within the corporate hierarchy; (2) the purpose and content of the statement; and (3) the temporal proximity of the statement to the adverse employment decision." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 375 (E.D. Pa. 2015) (citing *Parker v. Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 559 (3d Cir. 2009)).

The Court agrees that Plaintiff has only alleged a single discrete discriminatory act which, if timely, harmed "an identifiable term or condition" of her employment such that it could plausibly be considered an adverse employment action—that is, the failure to promote. *Morgan*, 536 U.S. at 114, 122 S. Ct. at 2073; *Muldrow*, 601 U.S. at 355, 144 S. Ct. at 974. However, other than the bare assertion that she was denied a promotion because of her gender and age, Plaintiff makes no further factual allegations regarding this action. As the City points out, Plaintiff fails to demonstrate how any of the "male and younger employees" whom Fusco allegedly treated with "respect" are similarly situated to her such that the denial of a promotion could be plausibly based on her gender or age. (Docket No. 28 ¶ 26). In this regard, Plaintiff does not state whether these other employees had the same job title, performed similar work-functions, held their positions for a similar time frame, or performed their tasks in a similar manner as she. *See Arevalo v. Brighton Gardens, Sunrise Senior Living, LLC*, No. CV 15-2563 (MAS), 2016 WL 4975199, at *6 (D.N.J. Sept. 16, 2016). Perhaps most importantly, she does not "provide any characteristics of those individuals who received the promotion[] to which she alleges she was entitled" or "whether she was, in fact, qualified to fill [the] position." *Golod*, 403 F. App'x at 702. *See Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) (finding that a

14

failure-to-promote claim was properly dismissed where the plaintiff "failed to allege any facts regarding her qualifications for the position"). Put simply, "to say that some employees received more than others falls far short of a plausible discrimination claim." *Arevalo*, 2016 WL 4975199, at *6.

Further, Plaintiff fails to establish "any causal link" between Fusco's comments and her denial of a promotion which would indicate that this decision was "taken under circumstances giving rise to an inference of discrimination." *McCreary*, 729 F. Supp. 3d at 463. While Plaintiff alleges that Fusco denied her the promotion, the "purpose and content" of the derogatory names he directly called her—i.e., delusional, liar, coward, bootlicker, town crier, and "stuuuuper"—do not permit an inference of sex- or age-based animus. *Danao*, 142 F. Supp. 3d at 375. Nevertheless, the general remark that "women belong in the kitchen," as well as the reference to menopause as "mentalpause," are remarks which could evidence such animus. Yet, Plaintiff "does not allege any date or date range that these comments occurred" or "allege that the comments occurred during the time . . . when Plaintiff was [denied the promotion]." *Emerson v. Stern & Eisenberg, P.C.*, No. CV 21-3096, 2022 WL 10208548, at *5 (E.D. Pa. Oct. 17, 2022). Nor does she provide any indication that these comments were made in relation to the decision to deny her a promotion. *See Parker*, 309 F. App'x at 559 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). "Without alleging facts that connect the discriminatory behavior with the employment decision at issue," the Court cannot plausibly conclude that the decision to deny Plaintiff a promotion was made under circumstances giving rise to an inference of sex- or age-based discrimination. *Emerson*, 2022 WL 10208548, at *5.

In sum, Plaintiff has failed to plead facts necessary to establish a prima facie claim of

15

discrimination on the basis of her sex or age.  Therefore, her discrimination claims under Title VII and the ADEA against the City at Counts VI and VII will be dismissed.

### b.  Section 1983

#### i.  Timeliness

Plaintiff brings her final federal claims under 42 U.S.C. § 1983 for sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause at Count IX of her Amended Complaint.  (Docket No. 28 at 14–15).  She contends that Ringgold violated her equal protection rights when he allegedly "sexually harassed, assaulted, and raped [her]."  (*Id.* ¶ 149).  Whereas Fusco's discriminatory actions include "verbal abuse, derogatory comments about [her] gender and age, denial of promotion, and creating a hostile work environment."  (*Id.* ¶¶ 150–51).  Finally, she maintains that the City, "through its policies, practices, and customs, failed to adequately supervise, train, or discipline its employees," including Ringgold and Fusco, and further "failed to take appropriate action to prevent or address the harassment, discrimination, and assault despite [her] complaints and reports."  (*Id.* ¶¶ 152–53).

Defendants argue that Plaintiff's § 1983 claim is barred by the applicable statute of limitations to the extent that she complains of events which took place more than two years prior to her filing of this lawsuit on July 31, 2025, and that she has not otherwise presented sufficient evidence to sustain her claims.  (Docket Nos. 33; 35; 43).  Plaintiff counters that equitable tolling should apply to her § 1983 claim against Ringgold because he "engaged in active concealment and intimidation designed to prevent [her] from timely reporting his misconduct," and that the continuing violation doctrine rescues her remaining § 1983 claims against the other Defendants. (Docket Nos. 57 at 2–3; 39).

Title 42 Section 1983 provides a cause of action for "the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. A plaintiff bringing a claim under § 1983 must demonstrate that he suffered a deprivation of some federal right and "that the person who has deprived him of that right acted under color of state or territorial law." *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980)). Plaintiff's § 1983 equal protection claims are analyzed under the same framework as her Title VII discrimination and hostile work environment claims. *See Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 426–28 (3d Cir. 2020).

Unlike Title VII claims, "§ 1983 has only a one-step 'remedial scheme': plaintiffs may file § 1983 suits directly in federal court," meaning "[t]here is neither an administrative process to be exhausted nor any mechanism by which discriminatory practices may be informally resolved with an administrative agency." *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 298–99 (3d Cir. 2017) (citations omitted). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014). "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Id.* (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).

As noted above, Plaintiff initiated this lawsuit on July 31, 2025. (Docket No. 1). Therefore, for her § 1983 claims to be timely, they must have accrued, at the latest, on July 31, 2023. *See Montanez*, 773 F.3d at 480. With respect to Ringgold, the Amended Complaint alleges that he committed the sexual harassment and assaults between mid-August 2018 and his resignation in March 2023. (Docket No. 28 ¶¶ 32–57). When each of these incidents occurred, Plaintiff knew about her injuries arising therefrom such that her § 1983 causes of action against Ringgold accrued

17

simultaneously therewith. *See Kach*, 589 F.3d at 634 ("As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury."). Thus, it is apparent on the face of the Amended Complaint that Plaintiff's § 1983 claims against Ringgold are time-barred. *Robinson*, 313 F.3d at 135, n.3.

Nevertheless, Plaintiff argues that her claims against Ringgold should be equitably tolled because he prevented her from timely reporting his misconduct "through threats and intimidation," including by telling her that "snitches get stitches."[2] (Docket No. 57 at 2–3). However, this argument is contradicted by Plaintiff's allegation that she reported "everything" to George Glagola, the Mayor, and an unidentified councilwoman. (*Id.* ¶¶ 56–57, 137). Even in the absence of such factual allegations, "[t]he remedy of equitable tolling is extraordinary, and we extend it 'only sparingly.'" *Kach*, 589 F.3d at 645 (quoting *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). Ringgold's statement that "snitches get stitches" does not rise to the level of severity necessary to prevent Plaintiff from asserting her claims as required for equitable tolling. *See Frasier-Kane v. City of Philadelphia*, 517 F. App'x 104, 106-07 (3d Cir. 2013) (assault by a police officer and fear of retaliation did not rise to the requisite level of "extraordinary" for equitable tolling purposes). Nor does it explain why her claims were brought over two years after she last worked with Ringgold, and such a "lack of diligence further supports our conclusion that tolling is inapplicable." *Poole v. Marks*, 441 F. App'x 854, 858 n.8 (3d Cir. 2011). *See, e.g.*, *Fox v. Lackawanna Cnty.*, No. 3:16-CV-1511, 2017 WL 5007905, at *9 (M.D. Pa. Nov. 2, 2017)

---

[2]     "Equitable tolling is extraordinary relief, and is appropriate only when: (1) a defendant actively misleads a plaintiff regarding his or her cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his or her claim in the wrong forum." *Brown v. Buck*, 614 F. App'x 590, 592 (3d Cir. 2015). Because "[t]he equitable tolling doctrine cannot toll the statute of limitations beyond the date of a plaintiff's actual knowledge of the injury giving rise to the claim," the first and third circumstances are not applicable here. *Mitchell v. MG Indus., Inc.*, 822 F. Supp. 2d 490, 497 (E.D. Pa. 2011). *See Getchey v. Cnty. of Northumberland*, 120 F. App'x 895, 899 (3d Cir. 2005) ("Since the first situation under which equitable tolling is appropriate requires the plaintiff to have been misled about the availability of a cause of action, the first situation does not extend to Warden Dungar's conduct.").

(finding that "a reasonable fear of retaliation" in the prison context does not constitute "extraordinary circumstances" to justify equitable tolling where plaintiffs were both released from prison years before their respective claims were filed."); *Fisher v. Worth*, No. CV 18-16793 (KMW) (AMD), 2022 WL 3500432, at *5 (D.N.J. Aug. 18, 2022) ("Plaintiff could have, but did not, file any claim during the 22 months after the transfer – sufficient to support equitable tolling as to this argument, and it serves as no basis for tolling of the limitations period."). Thus, Plaintiff's argument that equitable tolling is appropriate here is not persuasive.

It follows that more than two years elapsed between the other Defendants' discriminatory acts which occurred during Ringgold's employment at the Public Works Department and the filing of this action. To the extent Plaintiff's equal protection claims are based on the City's alleged failure to supervise Ringgold or "take appropriate action" to prevent his misconduct, these claims necessarily accrued prior to his resignation in March 2023 and, therefore, are time-barred. (Docket No. 28 ¶ 153). Likewise, Plaintiff alleges that Ringgold repeated the offensive remarks Fusco made towards her, so her claims arising from Fusco's "derogatory comments" about her gender and age must have occurred at a time when Ringgold still worked with them. *See id.* ¶ 31 (alleging that Ringgold heard Fusco "say derogatory things to Plaintiff"). Therefore, inasmuch as Plaintiff's equal protection claims stem from any comments made by Fusco prior to March 2023, these claims are also time-barred.

The foregoing conclusion is supported by Plaintiff's attempt to apply the continuing violation doctrine to her § 1983 claims against Fusco and the City. (Docket Nos. 38 at 4; 39 at 3). As in Title VII cases, the continuing violation doctrine provides an equitable exception to the statute of limitations in § 1983 cases. *Montanez*, 773 F.3d at 481. But, "the continuing violation doctrine does not apply when the plaintiff 'is aware of the injury at the time it occurred,'" and a

19

"continuing violation is occasioned by continual unlawful *acts,* not continual ill effects from an original violation." *Id.* (first quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 417 n.6 (3d Cir. 2003)); then quoting *Weis–Buy Servs., Inc. v. Paglia,* 411 F.3d 415, 423 (3d Cir. 2005)).

Once again, the Court finds that the continuing violation doctrine does not save Plaintiff's claims. First, while the tire-slashing incident on June 8, 2024 falls within the two-year statute of limitations for § 1983 claims, as the Court has already explained above, the Amended Complaint does not contain sufficient facts to plausibly infer that this event involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Mercy Cath. Med. Ctr.*, 850 F.3d at 566. Aside from this incident, Plaintiff does not allege any other unlawful acts occurred within the two-year limitations period, nor that Fusco or any other individual engaged in similar incidents of gender-based discrimination or harassment which would permit her to invoke the continuing violations doctrine. *See Walton v. Westmoreland Cnty.*, No. CV 21-860, 2024 WL 36971, at *11 (W.D. Pa. Jan. 3, 2024). Furthermore, Plaintiff was plainly aware of the alleged harm caused by Ringgold's actions at the time the assaults and harassment occurred, as evidenced by her contemporaneous complaints to various individuals, rendering the continuing violation inapplicable to these acts for purposes of her § 1983 claim against the City. *See Montanez*, 773 F.3d at 481. Accordingly, to the extent Plaintiff's § 1983 claims arose prior to Ringgold's resignation in March 2023, the Court concludes that these claims are time-barred as she has not established a continuing violation. *See id.* at 480–81.

While the Court further analyzes Plaintiff's equal protection claims against Fusco and the City below, her § 1983 claim against Ringgold is facially time-barred and his Motion for Judgment on the Pleadings will be granted as to this claim.

20

*ii. Sufficiency*

Notwithstanding the general untimeliness of Plaintiff's § 1983 equal protection claims, these causes of action are not supported by sufficient factual allegations to survive the present motions to dismiss. To that end, considering that Plaintiff's equal protection claims are analyzed under the same *McDonnell Douglas* framework that applies in Title VII cases, *see Starnes*, 971 F.3d at 426, the foregoing analysis of her Title VII and ADEA discrimination claims applies with equal force to her § 1983 discrimination claims as to all Defendants. *See* § V.A.ii, *supra*. While the § 1983 claims against Ringgold are plainly barred by the two-year statute of limitations, the Court briefly addresses the City's argument regarding municipal liability, as well as Fusco's position as to the sufficiency of Plaintiff's hostile work environment claims.

Beginning with the former, the City contends that Plaintiff has failed to identify a policy or custom that led to her constitutional injuries at issue, which is necessary for a local governing body to incur liability under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). In this regard, a municipal policy is established when someone with final authority issues an "official proclamation, policy, or edict" on behalf of the municipality. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A plaintiff can establish a custom by showing a course of conduct by municipal officials that, although not formally authorized, "is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).

"A plaintiff must identify the challenged policy [or custom], attribute it to the [municipality] itself, and show a causal link between execution of the policy and the [constitutional] injury suffered." *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir.

1985).  If the policy or custom does not violate federal law on its face, "causation can only be established by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequence.'"  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Brown*, 520 U.S. at 404, 117 S. Ct. at 1388).  "In certain circumstances, the unconstitutional custom can consist of a municipality's failure to train or supervise."  *MGJ v. Sch. Dist. of Philadelphia*, No. CV 17-318, 2017 WL 2277276, at *9 (E.D. Pa. May 25, 2017).  However, a plaintiff asserting a failure to supervise claim must "identify a specific supervisory practice that the defendant failed to employ."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

The Amended Complaint's allegation that the City allowed Fusco and Ringgold to violate Plaintiff's constitutional rights through its "policies, practices, and customs" is too conclusory to state a cognizable claim that a municipal policy or custom, adopted or promulgated by the City, caused her constitutional injuries.  *See Kranson*, 755 F.2d 4at 51.  Likewise, the sweeping allegation that the City "failed to adequately supervise, train, or discipline its employees" is a threadbare allegation that does not rise to the level of "deliberate indifference" for purposes of § 1983 liability.  *Berg*, 219 F.3d at 276.  Moreover, Plaintiff has failed to identify any specific training or supervisory practice that the City failed to employ to support a claim of liability under a failure to supervise or train theory.  *See Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 643 (E.D. Pa. 2018) ("Plaintiffs merely allege, without factual support, that all conduct occurred because the City Commissioners' Office failed to supervise the election . . . This sole conclusory allegation is insufficient.").  Accordingly, Plaintiff has failed to allege sufficient facts to support a claim for municipal liability and, as such, her § 1983 claim against the City will be dismissed.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (explaining that "vague assertions"

22

about a policy or custom are insufficient to state a claim under *Monell*).

Turning to the hostile work environment arguments, Fusco maintains that Plaintiff has failed to allege sufficient facts to establish an equal protection claim against him.  (Docket No. 33 at 12–13).  Like discrimination claims, a hostile work environment claim under the Equal Protection Clause shares the same elements as those brought under Title VII.  *See Starnes*, 971 F.3d at 428.  To succeed on a hostile work environment claim, Plaintiff must show: "1) the employee suffered intentional discrimination because of his/her sex; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person in like circumstances; and 5) the existence of respondeat superior liability."  *Mandel*, 706 F.3d at 167.  "The conduct must be so severe or pervasive as 'to alter the conditions of the [plaintiff's] employment and create an abusive working environment.'"  *Laymon v. Honeywell Int'l Inc.*, 645 F. Supp. 3d 443, 457 (W.D. Pa. 2022) (quoting *Moody v. Atl. City Bd. Educ.*, 870 F.3d 206, 214 (3d Cir. 2017)).

Initially, the allegation that Fusco denied Plaintiff a promotion constitutes a "discrete act," which the Court has already found to be unsupported by enough factual allegations to conclude it was taken under circumstances giving rise to an inference of discrimination.  *See* § V.A.ii, *supra*; *Morgan*, 536 U.S. at 114, 122 S. Ct. at 2073.  To the extent Plaintiff relies on Fusco's comments to support her hostile work environment claims, as the Court already indicated above, most of the derogatory names Fusco allegedly called Plaintiff—such  as delusional, liar, coward, and bootlicker—are unsupported by "any facts from which the court can reasonably infer that [he] did so because of her [sex], rather than because of some other reason." *Mudie v. Philadelphia Coll. of Osteopathic Med.*, 577 F. Supp. 3d 375, 381 (E.D. Pa. 2021).  His remaining comments, such as "women belong in the kitchen" and "mentalpause," standing alone, are not sufficiently severe or

23

pervasive to support a hostile work environment claim.  *See Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 573 (E.D. Pa. 2022) ("Isolated incidents and offhanded comments are not sufficient to sustain a hostile work environment claim." (citation modified)).  Furthermore, the fact that Ringgold witnessed at least some of Fusco's comments suggests that these remarks were made over the span of approximately seven years, i.e., between August 2018 and July 2025, which are too sporadic to be considered regular or pervasive.  *See Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (determining that seven comments over a span of over three-and-a-half years were not severe or pervasive enough to constitute a hostile work environment claim).

All told, Plaintiff's failure to state a claim of municipal liability, as well as her failure to allege sufficient factual allegations to support a discrimination or hostile work environment claim under the Equal Protection Clause, renders her § 1983 claims against the City and Fusco at Count IX subject to dismissal.

### c. Pennsylvania Political Subdivision Tort Claims Act

Turning to Plaintiff's state law causes of action, we begin with her intentional infliction of emotional distress ("IIED") and negligent supervision claims against the City at Counts IV and V of her Amended Complaint.  (Docket No. 28 at 9–10).  The City moves to dismiss these counts because it is immune from such suits under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541, et seq.  (Docket No. 35 at 5–6).  Because neither claim falls within any of the exceptions to the City's governmental immunity as enumerated in the PSTCA, Plaintiff's IIED and negligent supervision claims against the City will be dismissed.

"The PSTCA governs the extent to which political subdivisions, like the City, may be held liable in tort."  *Jean v. City of Philadelphia*, 604 F. Supp. 3d 271, 274 (E.D. Pa. 2022).  "The PSTCA grants broad immunity to municipal defendants based on intentional conduct," only

24

waiving it with respect to nine narrow categories of "negligent acts." *Butler v. Upper Merion Twp.*, 765 F. Supp. 3d 441, 453 (E.D. Pa. 2025).  In this regard, liability may only be imposed on a local agency for the following negligent acts: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse.  *See* 42 Pa. Cons. Stat. § 8542(b).

Because Plaintiff's IIED claim is based upon intentional conduct, this claim is barred by the City's immunity under the PSTCA.  *See Butler*, 765 F. Supp. 3d at 453.  By the same token, none of the nine exceptions for negligent acts listed in § 8542(b) apply here.[3]  Therefore, Plaintiff's state law claims against the City are barred by its immunity under the PSTCA, and Counts IV and V against the City will be dismissed.[4]

### d.  Remaining State Law Claims

The remaining state law claims in the Amended Complaint allege causes of action for sexual assault, rape,[5] and battery against Ringgold at Counts I–III, as well as a claim for IIED against both Ringgold and Fusco at Count IV.  (Docket No. 28).  Defendants argue that these

---

[3]    Although Plaintiff does not argue that the sexual abuse exception applies here, the Court notes that this exception only involves situations in which the victim of sexual assault is under the age of 18 at the time of the offense. *See City of Philadelphia v. J.S.*, 353 A.3d 566, 568 (Pa. 2026) ("We hold the unambiguous language of Section 8542(b)(9) waives immunity of political subdivisions or their employees *only* if the plaintiff was a minor at the time of the sexual abuse.").  Because Plaintiff was not a minor when Ringgold allegedly assaulted her, this exception is inapplicable here.

[4]    The Court notes that there is no evidence of record that Plaintiff provided written notice of her claims to the City within six months from the date her claims accrued, as is required for actions against a governmental agency under Pennsylvania law.  *See* 42 Pa. Cons. Stat. § 5522(a) ("Notice prerequisite to an action against government unit.").

[5]    At oral argument, Ringgold's counsel argued that sexual assault and rape are not cognizable civil claims under Pennsylvania law, but rather criminal offenses.  *See* Docket No. 78 at 46.  The Court coextensively analyzes Counts I–III against Ringgold as assault and battery claims, but to the extent there is not a separate civil cause of action for Plaintiff's claims of sexual assault and rape, this serves as an additional basis for dismissal.  *See, e.g.*, *Sung v. New Jersey*, 2019 WL 1173023, at *6 n.4 (D.N.J. Mar. 13, 2019) (dismissing claims for obstruction of justice, accomplice and accessory liability, and entrapment because "[t]hese are criminal law concepts that do not provide civil private causes of action"); *Brookins v. Bristol Twp. Police Dep't*, 642 F. App'x 80, 81 (3d Cir. 2016) (holding that a civil claim under Pennsylvania's criminal obstruction-of-justice statute was subject to dismissal).

claims must be dismissed because they are time-barred by the statute of limitations. The Court agrees.

Under Pennsylvania law, an action for assault or battery assault must be commenced within two years from the time the cause of action accrued. 42 Pa. Cons. Stat. § 5524(1). Likewise, the applicable statute of limitations for intentional infliction of emotional distress claims is two years. *See* 42 Pa. Cons. Stat. Ann. § 5524(7) (providing that any action or proceeding "which is founded on negligent, intentional, or otherwise tortious conduct" must be commenced within two years). "In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). "Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted." *Id.*

The foregoing precedent instructs that Plaintiff's assault and battery claims against Ringgold accrued on the date of the alleged assaults, i.e., between August 2018 and March 2023. *See, e.g.*, *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 249 (Pa. 2021) ("Consequently, the statute of limitations began to run, at the latest, when Rice was last assaulted by Bodziak. Rice had two years from that date to discover other actors potentially liable for her injury.") (footnotes omitted)); *Oldham v. Pennsylvania State Univ.*, 138 F.4th 731, 752 (3d Cir. 2025) ("Thus, applying Pennsylvania law, the claim accrued the day the alleged battery occurred."). In other words, because these claims were not brought within two years from the time of accrual, they are barred by the statute of limitations. *See* 42 Pa. Cons. Stat. § 5524(1).

Plaintiff does not dispute that these claims are late, rather she argues that equitable tolling should excuse her untimely filing because Ringgold's "explicit threats against reporting his misconduct" fall "squarely" within the recognized grounds for same. (Docket No. 57 at 2). The

26

Court need not address why equitable tolling is not appropriate here as the foregoing discussion of same in the context of Plaintiff's § 1983 claims applies equally to these state law claims. *See* § V.B.i., *supra*. The Court simply notes that, to the extent Plaintiff asserts a duress argument here, courts in this circuit have declined to recognize such a tolling mechanism when applying Pennsylvania law. *See, e.g.*, *McCary v. Simcox*, No. 24-CV-1922, 2025 WL 1872997, at *5 n.11 (E.D. Pa. July 7, 2025) ("To the extent that Pennsylvania law governs the issue whether the statute of limitations is subject to tolling in this case, under Pennsylvania law, duress is not sufficient to toll the statute of limitations."); *Leonard v. City of Pittsburgh*, No. 2:13-CV-455, 2013 WL 4541727, at *9 (W.D. Pa. Aug. 27, 2013) ("[T]he possibility of the duress doctrine tolling Pennsylvania's statute of limitations is foreclosed under state law."). To that end, in rejecting a duress defense to a statute of limitations challenge, the Third Circuit noted that "neither the Supreme Court of Pennsylvania nor either of Pennsylvania's intermediate appellate courts has definitively, or even circumspectly, addressed whether duress may toll the statute of limitations." *Kach*, 589 F.3d at 640. "Without so much as an intimation from the Pennsylvania courts that duress is a cognizable tolling device under Pennsylvania law," the Third Circuit declined "to manufacture such a device on [its] own initiative." *Id.* As such, Plaintiff has failed to invoke any tolling principles to these plainly time-barred claims.

As for Plaintiff's IIED claim, to state such a claim under Pennsylvania law: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Zucal v. Cnty. of Lehigh*, 760 F. Supp. 3d 290, 305 (E.D. Pa. 2024). It follows that "an IIED claim that is founded upon sexual harassment will accrue when the defendant's intentional or reckless conduct rises to the level of 'extreme and outrageous' behavior and causes severe emotional distress." *Smith v. RB*

27

*Distribution, Inc.*, 515 F. Supp. 3d 311, 316 (E.D. Pa. 2021). "Pennsylvania maintains a high bar for what constitutes extreme and outrageous conduct, often requiring a showing of 'continuing malicious actions' in cases of workplace harassment." *Zucal*, 760 F. Supp. 3d at 305 (quoting *Smith*, 515 F. Supp. 3d at 316–17). *See Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir. 2010) (explaining that extreme and outrageous conduct is that which goes "beyond all possible bounds of decency" and would be considered "atrocious, and utterly intolerable in a civilized community").

Assuming that Plaintiff stated a plausible IIED claim arising from Ringgold's conduct, this claim would have accrued, at the latest, between August 2018 and March 2023. *See Rice*, 255 A.3d at 249. Therefore, even viewing the allegations in the light most favorable to Plaintiff, her IIED claim against Ringgold is time-barred by Pennsylvania's two-year statute of limitations. *See* 42 Pa. Cons. Stat. Ann. § 5524(7). Yet, the only plausible allegations of extreme and outrageous acts in the Amended Complaint pertain to Ringgold—Fusco's alleged verbal abuse, derogatory comments, and denial of a promotion do not go "beyond all possible bounds of decency" as to constitute extreme and outrageous conduct. *Reedy*, 615 F.3d at 231–32. *See, e.g.*, *Hoy v. Angelone*, 720 A.2d 745, 754–55 (Pa. 1998) (rejecting an emotional distress claim arising from workplace sexual harassment involving "sexual propositions, physical contact with the back of [employee's] knee, the telling of off-color jokes and the use of profanity on a regular basis, as well as the posting of a sexually suggestive picture."); *Morales v. Bedi*, No. CV 21-5627, 2022 WL 2305775, at *5 (E.D. Pa. June 27, 2022) ("Ms. Bedi pleads improper disturbing conduct including unprofessional conversations before the dinner and the assault and batteries during the dinner but not conduct so improper it breaches all possible bounds of decency."). Accordingly, the only alleged harassment which could have potentially continued after March 2023 "does not rise to the

28

extremely outrageous level of conduct required to constitute an act of intentional infliction of emotional distress within the limitations period." *Brillhart v. Sharp*, No. 4:CV-07-1121, 2008 WL 2857713, at *6 (M.D. Pa. July 21, 2008).  As such, Plaintiff has failed to state a plausible IIED claim as to Fusco.

Based on the foregoing, Plaintiff's state law claims against Ringgold are plainly time-barred by the applicable statute of limitations, and she has otherwise failed to allege a plausible IIED claim against Fusco.  *See Robinson*, 313 F.3d at 135 n.3.  Therefore, Counts I–III against Ringgold, as well as Count IV against both Ringgold and Fusco, will be dismissed.

### e.   Leave to Amend

The Court's next inquiry is whether the dismissal of the claims in Plaintiff's Amended Complaint should be with prejudice or without prejudice.  The Third Circuit has held that in civil rights cases, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  An amended complaint is futile where it cannot withstand a renewed motion to dismiss.  *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  Here, the Court finds that any further amendment of Plaintiff's claims would be futile as they are largely time-barred under the applicable statute of limitations for the reasons set forth above.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding that an amendment was futile because the claims would be barred by the statute of limitations).  Moreover, Plaintiff does not set forth any additional facts in her briefs in opposition that would make the Court believe that she could state a claim against Defendants, nor has Plaintiff indicated that she is unable to provide her counsel with facts against those that she believes violated her rights.[6]  (Docket Nos. 37; 38; 39; 57).  Finally, Plaintiff has already amended

---

[6]       Notably, the underlying factual allegations were the subject of a formal internal hearing and investigation before Plaintiff brought this action.  To that end, counsel for the City advised at oral argument that there was a

her complaint once and she has not affirmatively sought leave to file a second amended complaint, nor provided a proposed pleading such that leave to amend may be denied on these grounds as well. *See U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013); *see also McWreath v. Range Res.-Appalachia, LLC*, 645 F. App'x 190, 196 (3d Cir. 2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend.'").

### f.   Remaining State Law Claims

Since Ringgold's counterclaims and crossclaim are state law tort actions and the parties are not diverse, this Court has discretion in whether it continues exercising supplemental jurisdiction. As this Court has held previously:

> Section 1367(c)(3) "permits a district court to decline the exercise of supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). "Congress explicitly green-lighted" the dismissal of state law claims in such situations. *Kach*, 589 F.3d at 650. With that said, "[t]he decision to retain or decline jurisdiction over state-law claims is discretionary" and "'should be based on considerations of judicial economy, convenience and fairness to the litigants.'" *Id*. at 650 (quoting *New Rock Assets Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996)) (further citations omitted).

*Pletcher v. Giant Eagle Inc.*, No. CV 2:20-754, 2022 WL 17488019, at *8 (W.D. Pa. Dec. 7, 2022). Because this case is only in the initial stages, the Court finds that it is in the interests of judicial economy, convenience, and fairness to the parties to decline supplemental jurisdiction over the remaining claims as there is no ongoing case or controversy of federal law and only state law issues

---

*Loudermill* hearing against Plaintiff in 2024, during which she raised the allegations of rape/a non-consensual relationship with Ringgold for the first time. (Docket No. 78 at 30, 34–35). The City reported her allegations to the police for further investigation, which ultimately concluded in Plaintiff declining to pursue charges. (*Id.* at 28, 30). Plaintiff's counsel confirmed that after the *Loudermill* hearing, Plaintiff "did nothing" until she hired her in 2025. (*Id.* at 32). Presumptively, the *Loudermill* hearing and police investigation would have provided Plaintiff's counsel with sufficient information to draft a more detailed complaint. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (providing that the determination of whether a complaint states a plausible claim for relief "requires the reviewing court to draw on its judicial experience and common sense.").

remain to be decided in this matter. *Id*. Ringgold's claims present a dispute that is best suited for resolution by a state tribunal because they concern local government and taxpayer interests. *See Kach*, 589 F.3d at 650. Therefore, Ringgold's counterclaims at Counts I–V against Plaintiff, as well as his crossclaim at Count I against the City, will be dismissed, without prejudice, to their being refiled in an appropriate state court. (Docket No. 30 at 22–27). As such, the Court will also lift the stay on Ringgold's motion to join the former Mayor of Clairton as an additional party to his counter/crossclaims, (Docket No. 76), and his Motion for Joinder will be denied, without prejudice so that it can also be adjudicated in an appropriate state forum. (Docket No. 31).

## VI.    CONCLUSION

Based on the foregoing, Defendants Eric Fusco's and City of Clairton's Motions to Dismiss [32] [34], as well as Defendant Duane Ringgold's Motion for Judgment on the Pleadings, are [42] granted. All claims in Plaintiff's Amended Complaint (Counts I–IX) will be dismissed, with prejudice as to all Defendants. Since there is no other basis for this Court to assert jurisdiction, the Court declines to exercise supplemental jurisdiction over Ringgold's remaining state law claims, and his counterclaims against Plaintiff and crossclaim against the City, are dismissed, without prejudice. Finally, the stay on Defendant Duane Ringgold's Motion for Joinder [76] is lifted, and his Motion to Join an Indispensable Party [31] is denied, without prejudice. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: August 5, 2026
cc/ecf: All counsel of record

31