**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PENELOPE BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1161 |
| | ) | |
| CITY OF CLAIRTON, DUANE RINGGOLD, and ERIC FUSCO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

Presently before the Court are two Show Cause Orders issued upon Plaintiff's counsel, Sharon L. Wigle, Esq. ("Attorney Wigle"), in the course of briefing a Motion for Judgment on the Pleadings filed by Defendant Duane Ringgold ("Ringgold"). (Docket Nos. 56; 67). The first order, dated March 17, 2026, directed Attorney Wigle to show cause why the initial brief Plaintiff submitted in opposition to Ringgold's motion—which contained deficient and incomplete citations, as well as hyperlinks and metadata indicating the use of a generative AI drafting software—did not violate Federal Rule of Civil Procedure 11(b) (hereinafter "Show Cause Order I"). (Docket No. 56). The Court further instructed Attorney Wigle to file an amended brief with corrected citations in conjunction with her response thereto. (*Id.* at 2). Upon receipt of same, the Court issued a second Show Cause Order on April 2, 2026 directing Attorney Wigle to demonstrate why her response to Show Cause Order I and the allegedly corrected brief submitted in conjunction therewith did not violate Rule 11(b) and the Rules of Professional Conduct, and why the Court should not issue sanctions for such conduct ("Show Cause Order II"). (Docket No. 67). On May 18, 2026, the Court held a hearing on both Show Cause Orders, the official transcript of which has

been produced and reviewed by the Court. (Docket No. 78). After consideration of Attorney Wigle's arguments, the relevant standards, and for the following reasons, the Court finds that Attorney Wigle's conduct violated Rule 11(b) and the duty to provide competent representation under Pennsylvania Rule of Professional Conduct 1.1. The Court further finds that the imposition of non-monetary sanctions under Rule 11(b) is appropriate for such improper conduct.

## II. BACKGROUND

Attorney Wigle initiated this employment dispute on behalf of her client, Penelope Bell ("Plaintiff" or "Bell"), against Defendants City of Clairton, Duane Ringgold, and Eric Fusco (collectively, "Defendants") on July 31, 2025. (Docket No. 1). After Defendants moved to dismiss her claims, the Court granted Plaintiff leave to amend her Complaint and denied Defendants' motions, as moot, and without prejudice. (Docket No. 27). On December 18, 2026, Plaintiff filed her Amended Complaint, which brought claims for sex and age discrimination, hostile work environment, civil rights violations, and several state law torts arising from her employment at the Clairton Public Works Department. (Docket No. 28).

On December 31, 2025, Ringgold answered the Amended Complaint and brought several state law counterclaims against Plaintiff, as well as a crossclaim for negligent supervision against Defendant City of Clairton (the "City"). (Docket No. 30). He also moved to join the former Mayor of Clairton, Richard Lattanzi, as an additional party to his counter/crossclaims under Federal Rule of Civil Procedure 19. (Docket No. 31). On January 2, 2026, Defendants Eric Fusco ("Fusco") and the City moved to dismiss Plaintiff's claims pursuant to Rule 12(b). (Docket Nos. 32–35). Plaintiff timely answered Ringgold's counterclaims and subsequently filed a brief in opposition to his Motion for Joinder on January 20, 2026. (Docket Nos. 36; 37). That same day, she submitted briefs in opposition to the motions to dismiss. (Docket Nos. 38; 39). Of note, in her response to

Fusco, she acknowledged that "individual employees cannot be held liable under Title VII or the [ADEA]" and agreed that such claims against him "may be dismissed." (Docket No. 38 at 3).

Thereafter, Ringgold filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) on January 27, 2026. (Docket No. 42). On February 16, 2026, Plaintiff submitted a six-page brief in opposition to his motion, which is the first document at issue here. (Docket No. 48). To that end, Plaintiff's brief contained six total citations to four different cases, all of which were incomplete and deficient. (*Id.*). None of the citations identified the issuing court, the publishing date, or any pinpoints to a specific location within the opinion. *See, e.g.*, *id.* at 1 (citing to "Caprio v. Healthcare Revenue Recovery Group, LLC, 709 F.3d 142"); *id.* at 2 (citing to "Garvin v. City of Philadelphia, 354 F.3d 215"). The brief further contained thirteen instances where no legal authority was quoted or cited, but merely stated "Source" accompanied by a hyperlink icon at the end of a paragraph.[1] (*Id.* at 2–5). Each hyperlink embedded therein simply directed the user to the Lexis homepage. (*Id.*).

Upon downloading this brief as a PDF from the Court's Case Management/Electronic Case Files ("CM/ECF") system, the Court's staff noticed that the "Document Properties" tab in Adobe Acrobat revealed that the original title of this document is "AI Assistant Response." As such, the Court issued Show Cause Order I on March 17, 2026, which detailed the foregoing errors and information gleaned from the metadata, and directed Attorney Wigle to show cause why she did not violate Federal Rule of Civil Procedure 11(b) by signing and filing this brief by March 24, 2026. (Docket No. 56). The Court also ordered Attorney Wigle to file an amended brief with corrected citations by the same date. (*Id.* at 2).

Two days later, Attorney Wigle filed a response to Show Cause Order I and a supposedly

---

[1] Specifically, these entries appeared in the following format: Source

amended brief, both of which contained clerical errors—e.g., an incorrect case number, misspelled names in the caption, and no attorney signature, *inter alia*—which the Clerk's Office directed her to correct and refile both documents using the Errata event. (Docket Nos. 57; 58). The next day, Attorney Wigle refiled the amended brief and response as Errata events and, in each instance, the document was improperly filed and necessitated correction from the Clerk's Office. (Docket Nos. 59; 60; 61). On March 23, 2026, the Clerk's Office issued another request for corrective action as the caption on the proposed order attached to Plaintiff's amended brief did not match the case and was missing the case number. (Docket No. 59-2). The proposed order attached thereto also did not correspond with the amended brief, but rather the response to Show Cause Order I. (*Id.*). In lieu of filing a proposed order with a corrected caption for the amended brief, Attorney Wigle resubmitted her response to Show Cause Order I and a corresponding proposed order three days later. (Docket Nos. 65; 65-2).

As for the content of these documents, the response to Show Cause Order I averred that: (1) Attorney Wigle had "reviewed and corrected all citations in the document as directed by the Court;" (2) "[t]he corrected citations [were] accurate and compl[ied] with the applicable rules of citation;" (3) the amended brief provided "a comprehensive analysis of why the motion should not be granted" and cited to "applicable case law and statutory provisions;" (4) Attorney Wigle "spent four days diligently researching, drafting, and reviewing the motion," and (5) Attorney Wigle utilized Lexis AI in preparing and drafting the brief. (Docket No. 61). Yet, the amended brief accompanying this response was largely unchanged except the six case citations now specified the issuing court and date, and the thirteen other hyperlinked citations no longer included the word "Source." (Docket No. 57). However, these thirteen other "citations" were not replaced by any legitimate legal authority and still contained hyperlink icons which directed the user to the Lexis

homepage. (*Id.*). In addition, the six case citations still failed to provide any pinpoints to the page or section in which the cited proposition is found. (*Id.* at 1–2). Finally, the amended brief cited to 42 U.S.C. § 1981—a statute under which Plaintiff had not brought any claim—and further argued that her claims seeking to hold Ringgold individually liable under Title VII and the ADEA should not be dismissed. (*Id.* at 3).

In this Court's estimation, the foregoing deficiencies in the amended brief contradicted Attorney Wigle's contentions in her response to Show Cause I, so the Court issued a second Rule upon Attorney Wigle on April 2, 2026 ("Show Cause Order II"), directing her to show cause why these two filings did not violate her duties under Pennsylvania Rules of Professional Conduct 3.3 and 1.1, as well as Federal Rule of Civil Procedure 11(b), and why the Court should not issue sanctions for such conduct. (Docket No. 67). The Court further directed Attorney Wigle to address whether she violated these rules when she argued that Plaintiff's claims seeking to hold Ringgold individually liable under Title VII and the ADEA should not be dismissed which, as the Court pointed out, was "wholly inconsistent" with the position she previously advanced with respect to Fusco where she agreed that such claims against him may be dismissed. (*Id.* at 3). Finally, Show Cause Order II directed Attorney Wigle to demonstrate why the Court should not dismiss the Title VII and ADEA claims against Ringgold and/or strike the brief in response to his Motion for Judgment on the Pleadings. (*Id.*).

On May 4, 2026, Attorney Wigle submitted her response to Show Cause II, as well as yet another amended brief responding to Ringgold's motion. (Docket Nos. 69; 70). In her response, Attorney Wigle explained that she had inadvertently filed a non-corrected version of the amended brief. (Docket No. 70 at 3). However, she could not locate the original corrected draft that she initially intended to file, so she redrafted the brief the day prior. (*Id.*). She also acknowledged the

inconsistent positions she took vis-à-vis Plaintiff's Title VII and ADEA claims against Fusco and Ringgold, and she withdrew "any prior argument" which "could be read as asserting individual liability contrary to law" and "apologize[d] for any confusion." (*Id.* at 8–9). In sum, Attorney Wigle maintained that there had not been any "intentional misconduct or lack of candor to the Court," but rather, the corrected version of the amended brief was simply not filed, which "create[ed] confusion." (*Id.* at 4).

The eleven-page second amended brief submitted in conjunction therewith contained seven case citations, only one of which was also cited in the initial and first amended briefs, and only two contained pinpoint cites. (Docket No. 69). In accordance with Attorney Wigle's response to Show Cause Order II, Plaintiff stated that, consistent with her position as to Fusco, she did not oppose dismissal of her Title VII and the ADEA claims against Ringgold. (*Id.* at 7). As such, the Court dismissed Plaintiff's employment claims against Ringgold and Fusco with prejudice on May 6, 2026, and further directed Ringgold to reply to Plaintiff's second amended brief and Attorney Wigle's response to Show Cause Order II. (Docket Nos. 71; 72).

On May 7, 2026, Ringgold filed a response wherein he primarily focused on Attorney Wigle's deficient briefing. (Docket No. 73). Ringgold advised that Attorney Wigle had not made any effort to contact his counsel since the Court issued Show Cause Order I: she did not notify opposing counsel of her errors, "did not seek to correct a falsehood or misrepresentation of legal authority in her brief, did not offer any effort to cure the same, nor did she even extend her regret for these actions." (*Id.* at 4). He asked the Court to strike Plaintiff's briefs subject to Show Cause Orders I and II and consider her defenses to his Motion for Judgment on the Pleadings to be waived or stricken. (*Id.* at 50). Finally, while he deferred to the Court on the question of whether sanctions should be imposed, he asked that "the record of these proceedings" be transmitted "to the

Disciplinary Board of the Supreme Court of Pennsylvania." (*Id.*).

The Court previously set an oral argument on all pending matters for May 12, 2026 in late March because Attorney Wigle had filed a motion on March 26, 2026 (which subsequently necessitated correction via an Errata event) advising that she would be on vacation from April 1, 2026 through May 1, 2026 and requested a temporary continuance of all proceedings during that period. (Docket Nos. 63; 64; 66). One week after the Court issued Show Cause Order II in early April, the oral argument was reset for May 18, 2026. (Docket No. 68). Thereafter, on May 17, 2026 at approximately 11:00 p.m.—i.e., the night before the oral argument—Attorney Wigle filed yet another brief in response to Ringgold's Motion for Judgment on the Pleadings. (Docket No. 74). She attached a letter addressed to the Court thereto, stating:

> Please be advised that I found my original motion that I was supposed to have filed with this court. The motion I found had the incorrect cites, this document would not open in [PDF], but I was able to convert this document to [W]ord and retrieve the document. I used Lexis and corrected these errors. Find the enclosed "Response to Judgment on the Pleadings.[''] As you will not, [sic] since this document was originally submitted, the Age and Title VII Claims have been dismissed for Duane Ringgold and Eric Fusco.

(Docket No. 74-3). This amended brief contained the same six case citations as Plaintiff's initial and first amended briefs, except each case was cited twice. *See* Docket No. 74 at 2 (citing to "Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142 (3d Cir. 2013), *Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142 (3d Cir. 2013)*"). In other words, there were twelve citations to four different cases, all of which still did not provide any pinpoint cites to the proposition referenced therein. *See id.* at 2–3. As indicated in Attorney Wigle's letter, this brief once again asserted that the employment claims against Ringgold were viable, and it also cited to 42 U.S.C. § 1981, a statute which, as noted above, is inapplicable in this matter. (*Id.* at 4).

At the oral argument the following day, Attorney Wigle reconfirmed that she utilized Lexis's AI software to draft Plaintiff's briefing and that she understood she had a duty to verify

any machine-generated citations. *See* Docket No. 78 at 10 ("THE COURT: [Y]ou understand that whether you use Lexis, Westlaw, or any other search engine, as an attorney, you have a duty to verify citations. You understand that? MS. WIGLE: Yes. Yes."). She also agreed that the Title VII and ADEA claims against Fusco and Ringgold had been properly dismissed by the Court nearly two weeks prior, despite arguing otherwise in the brief she filed the night before. (*Id.* at 6–7). Attorney Wigle further advised the Court that she is a self-employed attorney and "[does] all the work [herself]." (*Id.* at 11). The Court also noted that the docket contained several Errata entries and notices of correction by the Clerk's Office. *See id.* at 9 ("I note in a number of instances the Clerk's Office reports to me errata, and I don't know if you and/or your staff are having difficulties in making filings, but the docket sheet does reflect a number of erratas and clerk's notice of correction.").

As for Attorney Wigle's arguments, she asserted that, although "some of [the] cites don't specifically rule in [her] favor," they nonetheless "stand for the proposition that [she] cited, and that is definite." (*Id.* at 10). Ringgold's counsel, Steven Toprani, Esq. ("Attorney Toprani"), disputed this contention, specifically pointing to one case cited in Plaintiff's briefing, *Cunningham v. M & T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016), which concerned the Real Estate Settlement Procedures Act's statute of limitations and equitable tolling of same. (*Id.* at 13–14). In his view, "not even in dicta" does *Cunningham* "support[] the type of relief that this brief cites," which he argued "seems to be symptomatic of an AI problem that continues to be unresolved with the Court." (*Id.* at 14).

Beyond the substance of Plaintiff's briefs, Attorney Toprani argued that Attorney Wigle's belated filing is "presumptively her fourth bite at the apple" and "just another thinly veiled attempt to add justification to improper conduct." (*Id.* at 15). He told the Court that her late-night filing

resulted in a conferral at approximately 1:00 a.m. between him and his co-counsel, Todd Hollis, Esq., during which they "spen[t] time addressing" the previously dismissed employment claims reasserted therein, as well as the feasibility of filing a response before the hearing that day. (*Id.* at 7). Finally, he reiterated that "[a]t no point during the whole litany of these motions," show cause orders, and responses "did Ms. Wigle even so much as send an email to [him] or Mr. Hollis." (*Id.* at 12).

The Court took all matters under advisement at the conclusion of the hearing. (Docket No. 76). Thereafter, the Court issued a Memorandum Opinion and accompanying Order granting Defendants' respective motions and dismissing all remaining claims against them with prejudice on August 5, 2026. (Docket Nos. 79; 80). As stated in the Memorandum Opinion, the primary basis for dismissal was the untimeliness of Plaintiff's claims. (Docket No. 79). In sum, the bulk of her factual allegations concerned Ringgold—the most detailed of which occurred approximately seven years ago in August 2018—and even those which did not involve him either plainly occurred outside the applicable statute of limitations period or were undated and failed to state a claim for relief that was plausible on its face. (*Id.*). Having disposed of all pending motions in this matter,[2] and Show Cause Orders I and II having been fully briefed and argued, they are now ripe for disposition.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney certifies "after an inquiry reasonable under the

[2] The Court declined to exercise supplemental jurisdiction over Ringgold's remaining state law claims and dismissed his counterclaims against Plaintiff and crossclaim against the City, without prejudice. (Docket No. 79 at 30–31). As such, the Court also denied his motion to join the former Mayor of Clairton as an additional party to his counter/crossclaims, without prejudice, so that all claims and matters raised therein could be adjudicated in an appropriate state forum. (*Id.*).

circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court." *Shelton v. Chaudhry*, 763 F. Supp. 3d 675, 681 (E.D. Pa. 2025). The obligations imposed under Rule 11(b) "obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court." Fed. R. Civ. P. 11, advisory comm. n. 1993 amend.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).[3] "The lodestar of Rule 11" is "reasonableness, not bad faith," so a lawyer "can be sanctioned for objectively unreasonable conduct—in a word, negligence." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147–48 (3d Cir. 2024). Put differently, "courts can sanction lawyers for what they should have known, not just what they knew." *Id.* at 148. "The attorney must demonstrate an 'objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact.'" *Lifetime Well LLC v. IBSpot.com Inc.*, 819 F. Supp. 3d 373, 382 (E.D. Pa. 2026) (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)).

A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Moreover, the willfulness or negligence of an attorney's conduct "may bear on whether to impose sanctions and what those sanctions should be." *Wharton*, 95 F.4th at 148. The available sanctions

---

[3] Such notice may be made in a motion for sanctions or on the court's own initiative in an order to show cause why the conduct specifically described therein has not violated Rule 11(b). *See* Fed. R. Civ. P. 11(c)(2) and (3).

include "non-monetary directives" and "an order to pay a penalty into court," but a court must issue an appropriate show cause order in accordance with Rule 11(c)(3) before imposing monetary sanctions *sua sponte*. Fed. R. Civ. P. 11(c)(4). *See* Fed. R. Civ P. 11(c)(5) (setting forth the limitations on monetary sanctions).

Leaving aside Rule 11, pursuant to the Local Rules for the Western District of Pennsylvania, "[a]cts or omissions by an attorney admitted to practice before this Court" that "violate the rules of professional conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline." LCvR 83.3.A. In this regard, with the exception of Pennsylvania Rule of Professional Conduct ("Pa. R.P.C.") 3.10, "[t]he rules of professional conduct adopted by this Court are the rules of professional conduct adopted by the Supreme Court of Pennsylvania." *Id.*

The first Rule of Professional Conduct at issue here, Pa. R.P.C. 3.3, creates a duty of candor toward the tribunal and provides that a lawyer "shall not knowingly make a false statement of material fact or law to a tribunal" nor fail to correct any such false statement "previously made to the tribunal by the lawyer." Pa. R.P.C. 3.3(a)(1). "Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." Pa. R.P.C. 3.3 cmt. 4. A lawyer "must recognize the existence of pertinent legal authorities," as a "legal argument is a discussion seeking to determine the legal premises properly applicable to the case." *Id.* The second rule, Pa. R.P.C. 1.1, requires an attorney to "provide competent representation to a client" and specifies that "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Pa. R.P.C. 1.1. The commentary to this rule provides that competency "includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners,"

as well as "adequate preparation." Pa. R.P.C. 1.1 cmt. 5. Further, while a lawyer's unfamiliarity with a certain type of legal problem does not necessarily require "special training or prior experience" to handle such issues, "[s]ome important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems." Pa. R.P.C. 1.1 cmt. 2.

Local Rule 83.3 provides that "[f]or misconduct defined in these rules, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant." LCvR 83.3.A(3). Additionally, "[a] court may resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002). However, "a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Id.* (quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)).

## IV. DISCUSSION

The Court finds that Attorney Wigle's conduct violated Rule 11(b) and Pennsylvania Rule of Professional Conduct 1.1. As a result, the Court believes that non-monetary sanctions should be sufficient to deter repetition of her conduct or comparable conduct by others similarly situated. *See* Fed. R. Civ. P. 11(c)(4). As referenced in both Show Cause Order I and II, the Court imposes these sanctions pursuant to Federal Rule of Civil Procedure 11. (Docket Nos. 56; 67). The Court's rationale follows.

### *a. Attorney Wigle's Conduct Violated Rule 11(b) and Pa. R.P.C. 1.1*

The initial brief which gave rise to Show Cause Order I is almost completely devoid of any

legitimate legal support. *See Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 619 (D.N.J. 2002) (imposing Rule 11 sanctions where an attorney failed to offer any "statutory, case law, or factual support" for his claims). In this Court's estimation, the thirteen "Source" citations were seemingly produced by Lexis Source Link, a feature which is designed to make *validating* AI-generated responses faster and more reliable. *See* Deepank Varshney, *3 Ways the New "Source Link" Feature in LexisNexis Protégé Builds Trust in Legal AI*, LexisNexis Legal Insights (Oct. 1, 2025), available at: https://www.lexisnexis.com/community/insights/legal/b/product-features/posts/3-ways-the-new-source-link-feature-in-lexisnexis-protege-builds-trust-in-legal-ai. Even the few case citations in this brief were bereft of the most rudimentary information such as the court, year, and page number. *See* LCvR 5.1.L ("[H]yperlinks to a cited authority may not replace standard citation format."). "Any first-semester, first-year law student would know that a fundamental rule of lawyering—during litigation or otherwise—is to ensure that any authority to which a lawyer cites does indeed support the proposition for which he cites it." *Bunce v. Visual Tech. Innovations, Inc.*, No. CV 23-1740, 2026 WL 1082135, at *2 (E.D. Pa. Apr. 20, 2026). But, even more fundamental than ensuring the cited authority supports the proposition therein is the responsibility to provide discernible citations in the first place. Indeed, submitting a brief "without conducting an adequate citation check is the negligent conduct that Rule 11 was intended to prevent." *OTG New York, Inc. v. OTTOGI Am., Inc.*, No. 24-CV-07209 (BRM) (JRA), 2025 WL 2671460, at *3 (D.N.J. Sept. 18, 2025).

Nevertheless, Attorney Wigle's negligent conduct continued even after the Court issued Show Cause Order I and put her on notice that the initial brief she filed in opposition to Ringgold's motion desperately lacked legitimate legal support and contained deficient citations. (Docket No. 56). Despite this warning, the amended brief still contained hyperlink icons to the Lexis

homepage, failed to replace the thirteen "Source" citations with any valid legal authority, and did not provide pinpoint cites to the case citations. (Docket No. 57). Moreover, contrary to Show Cause Order I's explicit instruction, Attorney Wigle did not address Rule 11(b) in her response thereto—she merely stated that the amended brief "addresse[d] the current law and statutes relevant to the issues" raised in Ringgold's motion and averred that she had reviewed and corrected the citations therein. (Docket No. 61 at 1–2). However, if the amended brief addressed the relevant law and statutes, Plaintiff would have acknowledged that Title VII and the ADEA do not provide for individual liability and § 1981 would not have been referenced therein, at the very least. The continuing presence of these errors in the corrected brief is a strong indicator that she failed to conduct "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). It follows that it was objectively unreasonable for Attorney Wigle to fail to address Rule 11(b) in her response to Show Cause Order I and simultaneously submit an amended brief which flatly contradicted her contentions therein and still contained errors previously identified by the Court. *See Wharton*, 95 F.4th at 148.

Attorney Wigle's conduct did not improve after the Court issued Show Cause Order II. First, without seeking leave of Court, she filed a second amended brief in opposition to Ringgold's motion. (Docket No. 69). In the accompanying response to this brief, Attorney Wigle explained that she inadvertently filed a non-corrected version of the first amended brief, however, she could not locate the version she originally intended to submit, so she redrafted the second amended brief. (Docket No. 70). Yet, less than two weeks later, she purportedly found the original brief she meant to file and submitted it—once again, without seeking leave of Court—the night before the oral argument. (Docket No. 74-3). However, this brief still had incorrect cites and asserted individual liability claims under Title VII and the ADEA against Ringgold which had already been dismissed.

(*Id.*). It further provided the same legal authority in support of Plaintiff's arguments as the first amended brief, including the erroneous citation to § 1981. (Docket No. 74). In other words, the belated brief was essentially unchanged from Plaintiff's first amended brief and still possessed many of the same errors. If this belated filing was the brief which was supposed to be filed in response to Show Cause Order I, it flatly negates Attorney Wigle's contention that "the circumstances reflect an inadvertent filing error and resulting confusion." (Docket No. 70 at 2). This point is bolstered by the fact that the Clerk's Office instructed Attorney Wigle to correct certain clerical mistakes in the first amended brief and refile it as an Errata event, which she did the following day by submitting *the same brief*. (Docket No. 59). So, to assert that the incorrect version of this brief was accidentally submitted after it was filed *twice* on separate dates is unavailing.

Although Attorney Wigle maintains that there has not been any "intentional misconduct or lack of candor to the Court" and "any deficiencies were inadvertent," (Docket No. 70 at 6), Rule 11 requires only negligence, not bad faith. *See Wharton*, 95 F.4th at 147. This is because "[c]ourts rely on counsel's representations" and "[t]he integrity of the adversarial process depends on attorneys confirming the accuracy of what they submit before invoking judicial resources." *Lifetime Well*, 819 F. Supp. 3d at 383. Attorney Wigle had approximately one month to review the initial brief, identify the erroneous citations and deficiencies, and notify the Court or opposing counsel. (Docket No. 48). But, even when the Court expended judicial resources to place her on notice of such errors, she continued to submit haphazard filings and offer unconvincing justifications. *See Shelton*, 763 F. Supp. 3d at 683 ("That Simon was already on notice that his pleadings contained overt errors makes these violations even more egregious. Rather than adjusting course after being reminded of his Rule 11 obligations, Simon continued to submit filings

that contained false and unfounded factual and legal assertions, establishing a pattern of deficient lawyering."). In sum, Attorney Wigle's repeated failure to make a reasonable inquiry into the validity of the citations, arguments, and legal authority she presented to the Court is "the negligent conduct that Rule 11 was intended to prevent." *Gardner v. Combs*, No. 2:24-CV-07729, 2025 WL 3632704, at *3 (D.N.J. Dec. 15, 2025).

Turning to the Rules of Professional Conduct, the Court finds that Attorney Wigle's conduct also violated her duty to provide competent representation under Pa. R.P.C. 1.1 in that she failed to exercise the "thoroughness and preparation necessary" to represent Plaintiff in this matter. Pa. R.P.C. 1.1. First, competent representation required Attorney Wigle to "be so thorough as to check all the citations" in her initial brief before signing and filing it. *McCarthy*, 171 F.4th at 249–50; *see also id.* at 250 n.3 (collecting cases). Relying entirely on AI to write a brief "requires little to no knowledge or skill, and certainly does not reflect the thoroughness and preparation clients expect from members of the bar." *Stilp v. Borough of W. Chester*, No. CV 21-3989, 2022 WL 10208256, at *2 (E.D. Pa. Oct. 17, 2022). Indeed, "the analysis of precedent" and "legal drafting" are "important legal skills" which are "required in all legal problems." Pa. R.P.C. 1.1 cmt. 2. Then, after the Court identified these errors and gave her one week to make the appropriate corrections, competent representation required that Attorney Wigle take the time and "be so thorough as to check the authorities" in her *amended* brief. *McCarthy*, 171 F.4th at 250. Instead, just two days later, she once again "presented an unreasoned, error-filled filing and placed both her client's [position] and the potential for alternative resolution at risk." *Stilp*, 2022 WL 10208256, at *2.

Because Attorney Wigle attributed her deficient briefing to a filing error, the Court also cannot overlook her various incorrect filings in this matter. In this regard, the Clerk's Office has

issued three requests for corrective action and four notices of corrections for documents which were "incorrectly linked" or contained "repetitive attachment descriptions" as a result of Attorney Wigle's filings. *See generally*, Docket Nos. 55–66. Over a roughly one-month period, she attempted to remedy these clerical errors with six different Errata events, some of which were simply an Errata to correct a previous Errata entry. *See* Docket Nos. 50; 59; 60; 61; 64; 65. The Western District of Pennsylvania is a mandatory ECF court and, according to our Local Rules, documents must be filed "in the manner authorized by the Court's Standing Order regarding Electronic Case Filing Policies and Procedures and the ECF User Manual." LCvR 5.5; *see also* Electronic Case Filing Policies and Procedures § II. While the Court acknowledges that attorneys "could have difficulties adjusting to this mechanism of electronic case filing (as well as other computer procedures)," the Western District of Pennsylvania has been under the ECF system for over twenty years. *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 329 (3d Cir. 2012). *See* Standing Order, Docket No. 1 at 2:05-mc-186 (W.D. Pa. Apr. 20, 2005).

It is Attorney Wigle's responsibility to ensure that documents are properly filed in this Court, especially as a solo practitioner.[4] *See N'Jai v. Floyd*, No. CIV. 07-1506, 2009 WL 1531594, at *16 (W.D. Pa. May 29, 2009) ("Once Plaintiff made the request to file electronically with the Court, it was Plaintiff's duty to learn how to successfully file."). The inability to electronically

---

[4] Notably, this is not the first instance in which Attorney Wigle has encountered filing snafus or submitted documents which were noncompliant with the Local Rules. *See, e.g.*, *Rudy v. Tapestry Senior Housing Management*, No. 2:22-cv-01677, Docket No. 36 at 7 (Lenihan, M.J.) ("The asserted reasons for the delay do not show a breakdown in the judicial system as Plaintiff contends. Instead, it appears that the 'breakdown' was on [Attorney Wigle's] end in trying to navigate the court of common pleas' electronic filing system over a six-day period."); *Poindexter v. Stericycle*, No. 2:25-cv-00047, Docket Nos. 38; 44; 51; 55; 56 (Wiegand, J.) (twice striking plaintiff's summary judgment filings as "substantially deficient" and noncompliant with the Local Rules, denying leave to file a third amended response, and deeming defendant's concise statement of material facts as admitted); *Richard v. Goodwill Southwest Pennsylvania*, No. 2:23-cv-01193-JFS, Docket No. 41 (Hornak, J.) ("On this date, Chambers received a phone call from [Attorney Wigle], informing the Court that she filed a Complaint against Defendant on behalf of Plaintiff's son, Dave E. Richard, Jr. 24-cv-1060, ECF No. 1. Such was mistakenly logged on this docket as an Amended Complaint at ECF No. 39.").

file documents in accordance with this Court's policies and procedures "resulted in the unnecessary burdening of this court and the exhaustion of limited judicial time and resources." *Leuallen*, 180 F. Supp. 2d at 618 n.3. The two issues here—the briefing and the manner of its submission—seemingly stem from Attorney Wigle's technological use and proficiency, both of which do not meet "the standards of competent practitioners." Pa. R.P.C. 1.1 cmt. 5. Thus, the Court finds that this conduct violated Attorney Wigle's duty to provide competent representation under Pa. R.P.C. 1.1.

Finally, although Attorney Wigle may have violated her general duty of candor in various ways, the Court does not find that her conduct violated Pa. R.P.C. 3.3. As the Third Circuit recently pointed out in *McCarthy v. United States Drug Enf't Admin*, "Pa. R.P.C. 3.3 is violated only when an attorney 'knowingly' makes a false statement." 171 F.4th 245, 248 (3d Cir. 2026) (quoting Pa. R.P.C. 3.3(a)(1)). So, Attorney Wigle may not have "act[ed] with the normal diligence expected of an attorney" when she filed Plaintiff's initial brief with the "Source" hyperlinks, incomplete and deficient case citations, a reference to 42 U.S.C. § 1981, and an argument as to individual liability under Title VII and the ADEA, but it is debatable whether she *knowingly* failed to correct these errors. *Id.* at 249. Once these deficiencies were identified, Attorney Wigle represented to the Court that she had "reviewed and corrected all the citations" in the initial brief, the corrected citations were "accurate" and "complied with the applicable rules of citation," and the amended brief cited to "applicable case law and statutory provisions." (Docket No. 61). But, the amended brief she submitted alongside these representations still contained hyperlinks to the Lexis homepage in lieu of any legitimate legal authority, a citation to 42 U.S.C. § 1981, and an argument for individual liability under Title VII and the ADEA. (Docket No. 57). Attorney Wigle later acknowledged the inaccuracy of her previous statements regarding the

amended brief's corrections, stating it "still contained citation defects" and failed to conform with the "governing law regarding individual liability under Title VII and the ADEA." (Docket No. 70). However, according to Attorney Wigle, the falsity of these statements arose from a filing error, not an intentional misrepresentation to the Court—an explanation which, as discussed above, is dubious at best. (*Id.*).

It is this Court's opinion that while Attorney Wigle's affirmative representations as to the sufficiency, comprehensiveness, and accuracy of the amended brief's corrections were not true, it is unclear whether she *knowingly* made false statements to the Court. *See McCarthy*, 171 F.4th at 248 (finding no Pa. R.P.C. 3.3 violation where the attorney "mispresented the legal authorities he cited," but "it [was] debatable whether he knew such statements were false as he failed to read the cases."). Naturally, the inaccuracy of these statements also calls into question Attorney Wigle's claims about her review of the initial brief and time spent editing same because "claiming that one carefully did something can be false, particularly when one is held to a professional standard of care." *Wharton*, 95 F.4th at 149. Yet, the veracity of these representations cannot be conclusively determined from the record before the Court. As such, following the Third Circuit's holding in *McCarthy*, although the Court is troubled by Attorney Wigle's "cavalier stance" towards her various submissions, it does not find that she violated Pa. R.P.C. 3.3(a)(1). *McCarthy*, 171 F.4th at 249. The Court does remind counsel that "even beyond the requirements of Rule 3.3, an attorney, as an officer of the Court, has an overarching duty of candor to the Court." *Taggart v. Deutsche Bank Nat'l Tr. Co.*, No. CV 20-5503, 2021 WL 2255875, at *13 (E.D. Pa. June 3, 2021) (cleaned up).

For the foregoing reasons, the Court finds that Attorney Wigle's conduct violated Rule 11(b) and the duty to provide competent representation under Pa. R.P.C. 1.1. As discussed more

fully below, the Court will impose non-monetary sanctions under Rule 11(b) for this misconduct.

*b. Non-Monetary Sanctions Are Appropriate*

Having found violations of Rule 11 and Pa. R.P.C. 1.1, the Court must now determine an appropriate sanction. The commentary to Rule 11 provides that sanctions can include "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court;" or "referring the matter to disciplinary authorities." Fed. R. Civ. P. 11, advisory comm. n. 1993 amend. Although "intent is not required" to find a violation of Rule 11, "it still matters" and "may bear on whether to impose sanctions and what those sanctions should be." *Wharton*, 95 F.4th at 148.

Here, despite the puzzling explanations Attorney Wigle provided for the errors and deficiencies in her filings, the Court believes that her improper conduct was negligent and can be adequately addressed by a purely non-monetary sanction. *See Lifetime Well*, 819 F. Supp. 3d at 387. It appears to the Court that the briefing and argument Attorney Wigle presented suggests a fundamental misunderstanding of her misconduct—she repeatedly acknowledged that she used generative AI to draft the relevant briefs and even recognized her duty to independently verify citations, but she stopped short of applying these principles to her work product and conduct here. *Cf. Miller v. Regions Bank*, 833 F. Supp. 3d 1201, 1213 n.1 (N.D. Ala. 2026) ("[T]he court need not make a finding of AI usage to sanction an attorney for making misrepresentations to the court."). She has been forthcoming about her actions, but she has never acknowledged how those acts led us here nor provided any valid reason for her conduct.

In sum, while "perfect summaries and citations" are not "needed to avoid sanctions," had Attorney Wigle "taken reasonable efforts" to ensure the presence of proper legal authorities in her initial brief, "we would not be here at all." *McCarthy*, 171 F.4th at 252. Although non-monetary

sanctions are sufficient in this instance, the Court warns that "attorneys practicing before this Court should not be permitted to stick their heads in the sand and pray that ignorance will preclude them from upholding their professional responsibilities." *Id.* at 254 (Roth, J., concurring in part and dissenting in part). Attorney Wigle is advised that other courts have fined "parties who provide AI generated fictitious citations within the range of $1,000 to $6,000" and this Court will do the same should she fail to remedy her practices. *Allbaugh*, 2025 WL 2484188, at *5. *See, e.g.*, *Lifetime Well*, 819 F. Supp. 3d at 387 ($4,000 monetary sanction); *Bunce*, 2025 WL 662398, at *4 ($2,500 penalty); *Bunce*, 2026 WL 1082135, at *3 ($5,000 penalty); *Gardner,* 2025 WL 3632704, at *4 ($6,000 fine).

Accordingly, the Court orders that Attorney Wigle must complete four (4) hours of Continuing Legal Education ("CLE") credits pertaining to both artificial intelligence and legal ethics, and provide proof of same, as sanctions for her improper use of AI in this case in violation of Rule 11(b). *See Bunce*, 2025 WL 662398, at *4 (collecting cases requiring AI-related CLE credits as sanctions). Such CLE credits shall be in addition to the twelve CLE hours annually required by the Pennsylvania Continuing Legal Education Board. *See Contreras Madrid v. Wal-Mart Stores, L.P.*, No. CV 24-5229, 2025 WL 1698701, at *8 (E.D. Pa. June 17, 2025) (imposing a sanction of CLE hours on subjects related to the sanctioned conduct and specifying that these hours "must be in addition to, and not in lieu of, the twelve hours of annual CLE required by the Pennsylvania Continuing Legal Education Board.").[5] Attorney Wigle must also schedule and attend a training with the Clerk's Office on this Court's CM/ECF system and filing documents in accordance with our policies and procedures. Although Attorney Wigle's proficiency using the

[5] This is not the first instance in which this Court has found such a sanction to be appropriate and adequately tailored to address the harm identified by an attorney's misconduct. *See Wise v. Washington Cnty.*, No. CIV.A. 10-1677, 2015 WL 1757730, at *36 (W.D. Pa. Apr. 17, 2015) (directing counsel for both parties to attend a CLE on professionalism).

Court's CM/ECF system fails to meet the standard of a competent practitioner, this sanction is intended to deter Attorney Wigle from offering any such inadvertent-filing-error justification in the future for similar briefing and filing deficiencies.

Overall, these sanctions are not aimed at penalizing Attorney Wigle, but rather to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). This Court hopes that these non-monetary sanctions, which are "mild compared to other sanctions like monetary penalties," are "viewed as an invitation to reform." *Contreras Madrid*, 2025 WL 1698701, at *8.

## V. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff Penelope Bell's counsel, Sharon L. Wigle, Esq., violated Rule 11(b) and the duty to provide competent representation under Pa. R.P.C. 1.1. Pursuant to Show Cause Order I dated March 17, 2026 [56] and Show Cause Order II dated April 2, 2026 [67], the Court imposes non-monetary sanctions on Attorney Wigle under Rule 11(b) as a result of her misconduct. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: September 15, 2026

cc/ecf: All counsel of record.